UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ROY PARKER, on behalf of himself and all   Case No. 15-6733
others similarly situated,

              **COMPLAINT**

     Plaintiff,       **JURY TRIAL DEMANDED**


    -v-


CITY OF NEW YORK,


     Defendant.
-------------------------------------------------------X

   1.  This action seeks remedies for the City of New York's ("City") longstanding unconstitutional policy of placing substantial numbers of pretrial detainees in solitary confinement without any due process and for no legitimate purpose. For many years, the City placed New York City Department of Correction ("NYCDOC") detainees in solitary confinement for no reason other than the fact that at some time in the past, a detainee was found to have violated a disciplinary rule but was released from NYCDOC custody before the person had served the entirety of the disciplinary sentence. If the detainee were returned to NYCDOC custody, the City would by explicit policy then require that the detainee serve the remainder of his "old" solitary confinement time (hereafter "Old Time Policy").

   2.  The City had no constitutional or legal authority for imposing the Old Time Policy. The City provided no access to a hearing or other process at which the City could establish that placement in solitary confinement was necessary to ensure the safe and secure operations of the NYCDOC. The only possible ground for the City's insistence that a detainee serve Old Time was that the City sought to impose punishment on the detainee. But the City has no constitutional authority to impose punishment, particularly on pretrial detainees held in

NYCDOC facilities.  Pretrial detainees may not be punished until the government has secured a formal adjudication of guilt in accordance with due process of law.  In addition, pretrial detainees may not be deprived of their liberty without adequate process.

3.     Roy Parker, held by NYCDOC on Rikers Island as a pretrial detainee, was forced to endure more than 100 days of solitary confinement based on the City's unconstitutional Old Time Policy.  Mr. Parker brings this action on his own behalf and on behalf of all other similarly situated detainees, all of whom were subjected to the City's blanket and unlawful segregation policy.  Mr. Parker seeks damages and all other appropriate relief for the City's violation of his rights under the Fourteenth Amendment's procedural and substantive due process clauses.  He also seeks damages and appropriate relief for the class he seeks to represent.

4.     The use of solitary confinement in this arbitrary and capricious manner needlessly caused severe pain and suffering to Mr. Parker and other detainees.  Solitary confinement is one of the most severe forms of punishment that can be inflicted on human beings.  Healthy persons will suffer expected harms when placed in solitary confinement.  In solitary confinement, detainees languish alone in extreme isolation for at least 23 hours per day, 7 days per week.  They are housed in cramped cells that deny them meaningful physical movement and the normal human interactions necessary for a person's well-being.

5.     In NYCDOC facilities, solitary confinement is known as Punitive Segregation.  For more than a decade, the City had a written policy that authorized NYCDOC officials to place and keep pretrial detainees in Punitive Segregation to serve the balance of Punitive Segregation days incurred during a prior detention ("Old Time Policy").  Until September 16, 2015, this policy, Directive 6500R-B, stated in relevant part:

> If an inmate is released on bail or on his/her own recognizance, is
> discharged, or is transferred to the custody of another jurisdiction or

> agency before he/she finishes serving his/her Punitive Segregation
> sentence . . . the transfer will interrupt the sentence being served and the
> interruption will continue until the inmate returns to the jurisdiction of the
> Department, at which time he/she may be required to serve the balance
> owed . . . .

*See* Inmate Disciplinary Due Process, Directive 6500R-B § III.D.5.

6.     The Old Time Policy contrasted sharply with the disciplinary proceedings that the City uses to determine whether and for how long to place in Punitive Segregation detainees charged with an infraction.  NYCDOC provides such detainees with a hearing, advance written notice of such hearing, the opportunity to defend themselves, including the opportunity to establish facts concerning what, if any, penalty is appropriate during that detention, and a written statement by a fact-finder.

7.     In contrast, pretrial detainees who are released and then return to City custody with remaining Old Time received none of these protections before they are placed in Punitive Segregation.  The Old Time Policy authorized City employees to place and keep pretrial detainees in Punitive Segregation without any process, much less adequate process, on the ground that such Old Time is a "sentence" that was "interrupt[ed]," and for which process is not due.  This policy, as implemented by the City, deprived pretrial detainees of liberty without due process, in violation of their procedural due process rights.

8.     The City's Old Time Policy also violated substantive due process by punishing pretrial detainees before the government secured a formal adjudication of guilt in accordance with due process of law.  The policy, as implemented by the City, punished pretrial detainees for conduct from a previous detention, even if far removed in time and circumstance.  The City did not consider whether placing such pretrial detainees in Punitive Segregation was reasonably related to maintaining security and order in the detention facility.  Instead, the City relied solely

on the mistaken belief that Punitive Segregation is a "sentence" to be "continue[d]" under Directive 6500R-B.  Pursuant to the City's policy and practice, NYCDOC placed detainees in Punitive Segregation to serve Old Time regardless of whether such a detainee posed a threat to safety and security in the facility; whether such a detainee had ever been confined in general population after incurring Old Time; the disposition of any criminal charges for conduct for which such a detainee received Old Time; the disciplinary record of such a detainee relative to that of detainees in the general population; the security risk such a detainee posed relative to detainees in the general population; the passage of time since such a detainee received Punitive Segregation days; the passage of time since such a detainee was discharged from City custody; and the availability of adequate alternatives to Punitive Segregation.  The City's Old Time policy and practice was arbitrary, unrelated to the effective management of safety and security in the facility, and not reasonably related to any legitimate interest in maintaining order in City facilities.  As such, it violated the constitutional rights of Plaintiff and numerous additional pretrial detainees.

## JURISDICTION AND VENUE

9.      This action arises under 42 U.S.C. §§ 1983 and 1988 and the Fourteenth Amendment to the United States Constitution.

10.     The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

11.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in the Eastern District of New York.

## JURY DEMAND

12.     Plaintiff demands trial by jury in this action.

## PARTIES

13.     Plaintiff Roy Parker is a pretrial detainee who was confined for more than 100 days in punitive segregation at NYCDOC detention facilities as a consequence of the City's Old Time Policy.

14.     Defendant the City of New York is a municipal corporation which, through the NYCDOC, operates a number of detention facilities for pretrial detainees.  The City is responsible for promulgating and implementing policies with respect to the use of solitary confinement by the NYCDOC, and also is responsible for the appointment, training, supervision, and conduct of all NYCDOC personnel.  The City has for several years promulgated policy authorizing NYCDOC staff to place detainees in solitary confinement to serve "old" bing time.

## STATEMENT OF FACTS

15.     The City operates ten jails, four houses of detention, court pens in each of the five boroughs, and two hospital prison wards.

16.     The average daily population of NYCDOC facilities is 11,400 individuals, and between 2012 and 2015 NYCDOC held approximately 80,000 individuals in detention each year.

17.     The vast majority of detainees in NYCDOC facilities are pretrial detainees, awaiting trial because they cannot pay bail.

18.     Punitive Segregation is the City's version of solitary confinement and extreme isolation and the conditions described below are applicable to all of the relevant time period that the Old Time Policy was in effect.

19.     Solitary confinement is one of the most severe forms of punishment that can be inflicted on human beings.

20.     In Punitive Segregation, pretrial detainees are confined to a single-occupancy cell for at least 23 hours per day, 7 days per week, socially isolating them from others.

21.     Punitive Segregation cells are small and cramped, about 8' by 10', denying individuals held within them a meaningful opportunity for physical movement.

22.     In Punitive Segregation, pretrial detainees receive their food through a slot in their cell's steel door, and detainees must eat their meals alone.

23.     Normal human conversations are not possible in Punitive Segregation.

24.     Detainees in Punitive Segregation cannot communicate with other inmates unless they scream through their cell's steel doors.

25.     Detainees held in Punitive Segregation, have severely limited ability to interact with family and friends outside of Rikers Island.  For example, while pretrial detainees in general population are allowed one personal phone call per day, detainees in Punitive Segregation are allowed only one personal phone call per week, for a maximum of six minutes.

26.     Pretrial detainees in Punitive Segregation are prohibited from work assignments and rarely, if ever, have access to programming or vocational activities.

27.     Pretrial detainees are supposed to receive one hour of "recreation" per day, in which they are transferred in shackles to small, barren cages empty of any equipment that would facilitate exercise.

28.     As a direct result of NYCDOC policy and practice, about 90% of the time, detainees in punitive segregation are denied even this limited time outside of their solitary confinement cell.

29.    Pretrial detainees in Punitive Segregation also have limited access to appropriate and timely health care.  Mental health care often is superficial and conducted with the inmate locked in the cell and told to yell through the door to the clinician outside.

30.    It is expected that healthy persons will suffer harm when placed in solitary confinement.

31.    Solitary confinement such as NYCDOC imposes through Punitive Segregation causes severe trauma, even after short periods of confinement.

32.    Harms caused by solitary confinement include headaches, dizziness, heart palpitations, increased pulse, loss of appetite, digestive failures, hypersensitivity to noise and light, an inability to maintain concentration, depression, anxiety, and suicidal ideation

33.    Solitary confinement continues to cause harms even after a detainee is released, increasing the difficulty for individuals who have been detained in jail to function productively in their communities.

34.    During the relevant time period, NYCDOC Directive 6500R-B established a procedure for inmate disciplinary infractions, including advance written notice of the charges at least 24 hours before a hearing; the opportunity to appear at a hearing, to call witnesses, and to present rebuttal evidence; and a written statement by the fact-finder.

35.    The purpose of the hearings were to allow the adjudicator to "weigh the evidence presented at the hearing and reach a decision" as to the inmate's guilt or innocence and "the appropriate disposition or penalty, if any, to be imposed." Directive 6500R-B, § III.C.33.

36.    Until September 16, 2015, for pretrial detainees who left the City's custody with a balance of Punitive Segregation time, Directive 6500R-B, § III.D.5. provided that:

> If an inmate is released on bail or on his/her own recognizance, is
> discharged, or is transferred to the custody of another jurisdiction or

agency before he/she finishes serving his/her Punitive Segregation sentence, and/or before he/she makes restitution in accordance with a penalty imposed as a result of a disciplinary hearing, the transfer will interrupt the sentence being served and the interruption will continue until the inmate returns to the jurisdiction of the Department, at which time he/she may be required to serve the balance owed and/or finish making restitution.

37.     Directive 6500R-B thus authorized City employees to enforce the Old Time Policy, without regard to whether placing the detainee in Punitive Segregation was necessary to vindicate any legitimate penological or security interest.

38.     Pretrial detainees may not be subjected to conditions which are intended to serve or have the effect of punishment.

39.     Pretrial detainees may not be subjected to conditions of confinement that have no reasonable connection to a legitimate governmental objective.

40.     Before applying the Old Time Policy to pretrial detainees, however, the City never considered whether placement of a detainee in Punitive Segregation was connected in any way to maintaining security and order in the detention facility.

41.     Instead, pursuant to the Old Time Policy, the City reflexively placed detainees in punitive Segregation without evaluating the reasonableness of the restraints, the need for confinement in Punitive Segregation, or the availability of adequate alternatives.

42.     The City's policy and practice of placing detainees in Punitive Segregation to serve Old Time was arbitrary, unrelated to the effective management of safety and security in the facility, and not reasonably related to any legitimate interest in maintaining order in DOC facilities.

43. The City applied its Old Time Policy for the purpose of punishment and in direct contravention of detainees' right to be free from punishment before the government has secured a formal adjudication of guilt in accordance with due process of law.

44. The Old Time Policy was explicitly treated as a punishment in the following ways, without limitation: (a) assignment to Punitive Segregation was based on the City finding a detainee "guilty" of an infraction; (b) the conditions in Punitive Segregation, described above, imposed an affirmative restraint on liberty; (c) Punitive Segregation has been historically regarded as punishment; (d) many infractions that result in application of the Old Time Policy are duplicative of criminal laws; (e) the City linked Punitive Segregation to the promotion of retribution and deterrence, by calibrating the number of days in Punitive Segregation for each infraction as if the pretrial detainee had been convicted of a crime, and by treating Old Time like a sentence imposed after a jury trial on a criminal charge.

45. The Old Time Policy lacked any rational purpose other than punishment, and even if there were such a purpose, such confinement in Punitive Segregation was excessive in relation to such alternative purpose and not reasonably related to a legitimate governmental objective.

46. Pursuant to the City's Old Time Policy, when pretrial detainees were placed in Punitive Segregation to serve Old Time, the City refused to provide the following: the opportunity to appear at a hearing concerning the appropriate disposition or penalty under the circumstances; advanced written notice of such a hearing; the opportunity to call witnesses and present rebuttal evidence; and a written statement by the fact-finder as to the evidence relied on and the reason for the action in violation of the Fourteenth Amendment's procedural due process protections.

47.     Under Directive 6500R-B, the City considered the placement of a pretrial detainee in Punitive Segregation to serve Old Time to be an "interrupt[ion]" of a "sentence," for which they did not need to provide pretrial detainees with Adequate Process.

48.     Pretrial detainees have a liberty interest in not being placed in Punitive Segregation, arising both from the Fourteenth Amendment itself, by reason of guarantees implicit in the word "liberty," and from an expectation or interest created by state and city laws or policies.

49.     The Old Time Policy deprived pretrial detainees of their liberty interest in not being placed in Punitive Segregation, without adequate process.

50.     Roy Parker was detained at Rikers Island in as a pretrial detainee.  During this detention, he received 120 days in Punitive Segregation and served approximately 10 days in Punitive Segregation.  Mr. Parker was released from City custody in or about the same month he arrived.  Mr. Parker was later arrested on new charges and detained in City custody.  Mr. Parker was placed in Punitive Segregation at Rikers Island to serve his Old Time.  He served more than 100 days of Old Time.  Upon information and belief, Mr. Parker served this Old Time beginning in February 2014.

51.     Mr. Parker did not receive advance written notice, a hearing, the opportunity to defend himself, the opportunity to establish facts concerning what an appropriate disposition or penalty should be, or a written statement by a fact-finder before he was placed in Punitive Segregation to serve Old Time.

52.     The placement of Mr. Parker in Punitive Segregation to serve Old Time without adequate process was authorized by the City's Old Time Policy.

53.     In Punitive Segregation, Mr. Parker was confined to his cell twenty-three hours per day except for an occasional hour of recreation.  He was isolated and allowed almost no social interaction with others.  As a result of his extreme isolation, Parker suffered severe mental and emotional harm.

54.     During his confinement in Punitive Segregation to serve Old Time, Mr. Parker was subjected to onerous and punitive conditions of confinement that are not imposed upon detainees held in general population.  For example, he was not provided with adequate medical and mental health care while in Punitive Segregation.

55.     Pursuant to the City's Old Time Policy, the NYCDOC did not evaluate the reasonableness of Mr. Parker's confinement in Punitive Segregation or the availability of adequate alternatives in light of the Mr. Parker's circumstances and the circumstances of the facility.

56.     Because of his confinement in Punitive Segregation on Old Time, Mr. Parker has suffered mental, emotional, and psychological harm, in addition to loss of liberty.

57.     For years, the City has known that solitary confinement, implemented in City facilities as Punitive Segregation, causes serious and permanent harm to inmates and constitutes punishment.

58.     New York City's Department of Health and Mental Hygiene concluded in 2014 that between 2010 and 2012 acts of self-harm were strongly associated with assignment of inmates to solitary confinement.

59.     Between 2010 and 2012, NYCDOC Detainees placed in solitary confinement were approximately 6.9 times as likely to commit acts of self-harm, after controlling for other relevant variables, and 6.3 times as likely to commit potentially fatal self-harm.

## CLASS ALLEGATIONS

60.     With respect to his claims for damages, Plaintiff Roy Parker bring this action on

his own behalf and, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(l), and 23(b)(3), on

behalf of:

> all persons who have been pretrial detainees in the City's custody held in
> Punitive Segregation to serve Old Time, in violation of the Fourteenth
> Amendment's substantive and procedural due process protections.

61.     The class is so numerous that joinder of all members is impracticable.  Over the

past three years, hundreds of detainees in NYCDOC custody have served Old Time.  Pursuant to

the City's Old Time Policy, none of these detainees received adequate process before

confinement in Punitive Segregation.  All class members have been detained in the City's

custody, and most are economically disadvantaged, making individual lawsuits impracticable.

Judicial economy weighs in favor of avoiding multiple actions challenging the same policy and

practice, particularly where individual suits could lead to potentially inconsistent results.

62.     The class members are identifiable using records maintained by the City in the

ordinary course of business.

63.     During the relevant time period, the City promulgated and implemented Directive

6500R-B, which is a specific policy applicable to all class members herein.  The City was aware

of and allowed to continue a policy and practice in which pretrial detainees were placed and held

in Punitive Segregation, without due process, to serve Old Time.  The City has abridged class

members' Fourteenth Amendment right to be free from punitive measures that may not

constitutionally be imposed before a determination of guilt. The City also has abridged those

members' Fourteenth Amendment right to procedural protections before being deprived of

liberty.

64.     Common questions of law and fact exist for all class members herein and predominate over any questions solely affecting individual members thereof.

65.     Among the questions of law and fact common to members of the class are:

    a.  whether the City's policy and practice of holding pretrial detainees in Punitive Segregation to serve Old Time violated the Fourteenth Amendment;

    b.  whether confinement of pretrial detainees in Punitive Segregation to serve Old Time was specifically for the purpose of punishment and/or had the effect of imposing punishment;

    c.  whether confinement of pretrial detainees in Punitive Segregation to serve Old Time was reasonably related to a legitimate governmental objective;

    d.  whether pretrial detainees had a liberty interest in avoiding confinement in Punitive Segregation to serve Old Time; and

    e.  what process pretrial detainees were due before confinement in Punitive Segregation.

66.     The City is expected to raise common defenses to the claims of all class members herein, including denying that their policies and practices violate the Constitution.

67.     Plaintiff's claims are typical of those of all class members herein, as his claims arise from the same policies and practices, and Plaintiff's claims are based on the same legal theories as those of all class members herein.  The cause of Plaintiff's injuries is the same as the cause of the injuries suffered by all class members herein, namely the City's policies and practices.

68.     Maintaining this action as a class action is superior to other available methods because individual damages claims are not likely to be feasible.

69.     Plaintiff is capable of fairly and adequately protecting the interests of all class members herein because Plaintiff does not have any antagonistic interests thereto.  Counsel experienced in civil rights litigation, prisoners' rights litigation, complex litigation, and class actions represent Plaintiff.

### FIRST CLAIM FOR RELIEF
42 U.S.C.§ 1983 - Fourteenth Amendment
(Substantive Due Process)

70.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

71.     By its policies and practices described herein, the City authorized the confinement of plaintiff and class members in Punitive Segregation to serve Old Time, violating the Due Process Clause of the Fourteenth Amendment.  As a result of these unconstitutional policies and practices, Plaintiff and class members have suffered and continue to suffer physical, psychological, mental, and/or emotional injuries, as well as loss of liberty.

72.     The City's policies and practices described herein were intended to punish and/or had the effect of punishing plaintiff and class members in violation of their Fourteenth Amendment right to be free from punishment as pretrial detainees.

73.     By confining plaintiff and class members in Punitive Segregation to serve Old Time under harsh conditions and isolation that were not reasonably related to any legitimate interest in maintaining order in the facility, the City punished plaintiff and the class in violation of their Fourteenth Amendment right to be free from punishment as pretrial detainees.

## SECOND CLAIM FOR RELIEF
42 U.S.C. § 1983 - Fourteenth Amendment
(Procedural Due Process)

74.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

75.     By its policies and practices described herein, the City authorized the confinement of plaintiff and class members in Punitive Segregation to serve Old Time without adequate process, violating the Due Process Clause of the Fourteenth Amendment.  As a result of these unconstitutional policies and practices, Plaintiff and class members have suffered and continue to suffer physical, psychological, mental, and/or emotional injuries, as well as loss of liberty.

76.     Plaintiff and the class have a liberty interest in avoiding Punitive Segregation. This liberty interest arises from both the Due Process Clause of the Fourteenth Amendment, by reason of guarantees implicit in the word "liberty," and from an expectation and interest created by state and city laws or policies.

77.     By placing plaintiff and the class in Punitive Segregation to serve Old Time without regard for the appropriateness of such confinement  and without adequate process, the City violated Plaintiff's and the class members' due process rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

a.       Declare that the suit is maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3);

b.       Award compensatory damages in an amount to be determined for all physical, psychological, mental, and emotional injuries, as well as loss of liberty, sustained by Plaintiff and the class as a result of the policies and practices alleged herein;

c.       Award reasonable attorneys' fees, together with the costs of this action; and

d.       Grant such other further relief as the Court may deem appropriate.

Dated:  November 23, 2015
           New York, New York

                                        Respectfully submitted,


                                        ___/s/ Alexander Reinert_____
                                        Alexander Reinert (AR 1740)
                                        55 Fifth Avenue, Room 1005
                                        New York, NY 10003
                                        (212) 790-0403
                                        areinert@yu.edu

                                        Eric Hecker (EH 0989)
                                        Daniel Mullkoff (DM 4602)
                                        CUTI HECKER WANG LLP
                                        305 Broadway, Sixth Floor
                                        New York, NY 10007
                                        (212) 620-2600
                                        ehecker@chwllp.com
                                        dmullkoff@chwllp.com

                                        *Attorneys for Plaintiffs*