UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROY PARKER *et al.* on behalf of themselves and
all others similarly situated*,*

                Plaintiffs,               **MEMORANDUM AND ORDER**
                                             15 CV 6733 (CLP)

        - against -

CITY OF NEW YORK,

                Defendant.
------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On November 23, 2015, Roy Parker, on behalf of himself and all others similarly

situated, filed a class action Complaint against the City of New York, claiming that the New

York City Department of Corrections ("NYCDOC") had violated the Constitution by holding

pretrial detainees in solitary confinement or punitive segregation ("PSEG") without providing

them with due process and for no legitimate purpose.  Presently before this Court is the

plaintiffs' motion for preliminary approval of the Class Action Settlement, Conditional

Certification of the Settlement Class, and appointment of plaintiffs' counsel as Class Counsel.

For the reasons set forth below, the Court grants plaintiffs' application in its entirety.

A.  Factual Allegations

Following the filing of the Complaint on November 23, 2015, the City filed an Answer on April 21, 2016.  The plaintiff's First Amended Complaint was thereafter filed on November 12, 2016, adding Rajab Asep, Christopher Chandler, Jamal Coleman, Allana Dixon, Chauncey Miranda, and Cesar Rivera as named plaintiffs.

Plaintiffs allege that for many years, NYCDOC pretrial detainees had been placed in PSEG for no reason except for the fact that the detainee had previously been found to have violated a disciplinary rule while incarcerated on another occasion, but had been released from custody prior to serving the entirety of the disciplinary sentence.  Plaintiffs allege that if the detainee were later returned to NYCDOC custody, the City would require the detainee to serve the remainder of his "old" solitary confinement time.  Plaintiffs allege that this explicit policy of the City, referred to as the "Old Time Policy," violated plaintiffs' constitutional rights because defendant never provided these detainees with a hearing or any other process. The Old Time Policy was set forth in a NYCDOC directive and described as follows:

> If an inmate is released on bail or on his/her own recognizance, is discharged, or is transferred to the custody of another jurisdiction or agency before he/she finishes serving his/her Punitive Segregation sentence . . . the transfer will interrupt the sentence being served and the interruption will continue until the inmate returns to the jurisdiction of the Department, at which time he/she may be required to serve the balance owed[.]

(Reinert Decl.[1] ¶ 4 (quoting from Inmate Disciplinary Due Process, Directive 6500R-B, III.D.5, attached as Ex. A)).

---

[1] Citations to "Reinert Decl." refer to the Declaration of Alexander A. Reinert, Esq., dated August 23, 2017.

While the City claimed that placement in PSEG was necessary to ensure the safe operation of the detention facility, plaintiffs allege that it was simply to punish pretrial detainees who may not be punished until a formal adjudication of guilt has been made in accordance with due process. In seeking compensatory damages for the time spent in PSEG as a result of the Old Time Policy, plaintiffs allege that the defendant's policy violates the substantive and procedural due process rights of pretrial detainees.[2]

B. <u>Discovery and Settlement Discussions</u>

The Court has supervised discovery in this case and engaged in numerous settlement discussions with the parties over an 18 month period, culminating in the execution of the settlement Stipulation on August 11, 2017. (Reinert Decl. ¶¶ 6, 13). Plaintiffs' counsel obtained and reviewed documents reflecting the history of the Old Time Policy, as well as the disciplinary and PSEG records of individual class members. (<u>Id.</u> ¶10). In addition to reviewing over 3,000 pages of documents, plaintiffs' counsel interviewed current and former NYCDOC detainees, and conducted the Rule 30(b)(6) deposition of the NYCDOC officer responsible for administering the Old Time Policy. (<u>Id.</u>) Counsel asserts that they spent significant time and effort reviewing these records, preparing spreadsheets, and computing the time spent by the class members in solitary confinement due to the Old Time Policy. (<u>Id.</u>)

The parties participated in approximately 15 settlement conferences with the undersigned Magistrate Judge, and engaged in detailed and protracted arms' length negotiations which ultimately resulted in the settlement currently before this Court. According to the parties,

---

[2]The Old Time Policy was discontinued as of September 16, 2015. <u>See</u> <u>Bryant v. City of New York</u>, No. 14 CV 8672, 2016 WL 3766390 (S.D.N.Y. July 8, 2016). Thus, plaintiffs' claim for damages is based only on past time spent in PSEG prior to the change in policy.

negotiating the terms of the Stipulation itself required approximately six months, and intervention and assistance by this Court in resolving various disputes. The legal issue of whether the Old Time Policy violated the substantive and procedural due process rights of the pretrial detainees was subject to serious dispute on both sides, with no controlling legal decision, creating uncertainty as to the outcome of the case for both parties. Thus, the settlement was hard fought, with four main issues being the focus of negotiations: 1) the overall amount of damages for the class, measured on a per diem basis; 2) the identification of class members; 3) the determination of compensation for each individual class member; and 4) the notice and claims process.

C.  The Terms of the Proposed Settlement

The parties have submitted for the Court's review the written settlement Stipulation (Reinert Decl., Ex. 1). According to the terms of the Stipulation, the Class is defined as the named plaintiffs and all people who were confined in PSEG while a pretrial detainee based on the Old Time Policy at any time between November 23, 2012 and September 16, 2015 (the "Class").

Class members will receive minimum compensation of $175 per day spent in PSEG while a pretrial detainee, as a result of the Old Time Policy. (Stip. ¶ 57). Class members who were diagnosed as having a serious mental illness or who were under the age of 18 when they served PSEG time due to the Old Time Policy will receive $200 per day spent in PSEG. (Id. ¶¶ 55-56). These per diem amounts are comparable to settlements and judgments in other actions of this type. (See Reinert Decl. ¶ 17 (citing cases)). Having reviewed the cases cited by both parties and discussed the issue on many occasions, the Court agrees that the per diem

4

amounts agreed upon here are commensurate with, and possibly better than, amounts received in other similar cases.

Based on the discovery conducted during the litigation, the parties have identified approximately 470 class members (see Stip., Ex. B), and thus, on average, the class members will receive approximately $10,500, with an anticipated total maximum amount paid of $4,963,175. (Stip. ¶ 59). Unlike some settlements, in which the defendant makes a fixed payment into a common fund marked for distribution to the class, the Stipulation provides for direct payments to each class member by the defendant based on claims forms submitted to the Claims Administrator. (See id. ¶ 118). Moreover, unlike some class settlements where the plaintiffs' counsel takes a percentage of the total fund regardless of how many class members participate, here, the class members who participate in the settlement will receive the full value of their claims. Plaintiffs' counsel here have agreed to seek fees in a separate motion brought before this Court with no prior agreement with the defendant. (Id. ¶¶ 70-72).

The Stipulation further provides for modest service awards to the named plaintiffs of no more than $500 per person. (Id. ¶ 121). Plaintiffs' counsel will move for approval of those individual awards at the time the Class moves for final approval of the settlement. (See id.)

The parties have designated Garden City Group, Inc. as the proposed Claims Administrator. (Id. ¶ 75). Defendant has agreed to pay all of the costs and expenses associated with the claims administration process, including the Claims Administrator's fees and costs associated with the notice process and with the payment process. (Id. ¶ 74).

D.  Notice and Claims Process

Given that this is a Rule 23 opt-out class,[3] in which members seeking compensation must filed a claim to participate, the plaintiffs have made a diligent effort to determine those class members who remain in City or State custody, and estimate that half of the class members are still in custody and easily reached.  Sending them notice and providing answers to their questions is of less concern than those class members who are no longer in custody and who may be difficult to reach because of the possibility that they may have changed addresses since the last address reflected in defendant's records.  The procedure for locating and notifying these class members is as follows: 1) using last known addresses and information provided by the City, the first attempt will be to send notice to that last known address; 2) if the notice and correspondence is returned, the Fund administrator will perform a skip trace to find the correct address; and 3) if that is unsuccessful, class counsel will undertake their own reasonable efforts to locate any missing class member.  (Stip. ¶¶ 81-83).

If fewer that 75% of class members respond to the class notice – either by filing a claim or opting out – the time for responding to the notice will be extended by 60 days.  (Id. ¶¶ 93, 98).  This extension is designed to give class counsel the opportunity to reach out to the class members and assist in their filing claims or answer their questions.  (Reinert Decl. ¶ 24).

The parties have agreed to work together to create a "Last Known Address List" which will include last known addresses for each class member.  Upon preliminary approval of the

[3]In the Amended Complaint, plaintiffs alleged that the action qualified for treatment as a class under both Rule 23(b)(1) and Rule 23(b)(3).  (See Am. Compl. ¶¶ 73-82, Nov. 12, 2016, ECF No. 92).  Plaintiffs' briefs in support of the Stipulation focus only on certification under Rule 23(b)(3).  Since the Court concludes that the case is properly maintained as a class action under Rule 23(b)(3), the Court does not address certification under the standard provided in Rule 23(b)(1).

settlement, the Claims Administrator will generate draft notices in both English and Spanish to be mailed to the Class members. (Stip., Ex. C). No later than 30 days after approval, defendant will present the notice form for each Class member for review by Class Counsel. (Id. ¶ 81). In addition, within 45 days of preliminary approval, defendant will post a notice in NYCDOC facilities, and New York City Department of Probation facilities, in places where individuals are likely to see them, and the Claims Administrator will establish a website, email address, and toll-free telephone number for Class Members to contact with questions about the process. (Id. 85).

Plaintiffs move for preliminary approval of the settlement, arguing that the settlement is fair for all of the reasons set forth in City of Detroit v. Grinnell Corp., 495 F. 2d 448, 463 (2d Cir. 1974), abrogated on other grounds, Goldberg v. Integrated Rest., Inc., 209 F.3d 43 (2d Cir. 2000). Plaintiffs also seek conditional certification of the proposed Class under Rule 23.


DISCUSSION

A. Approval of the Settlement

To grant preliminary approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e). Judicial policy favors the settlement and compromise of class actions. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Whether a settlement is fair is a determination within the sound discretion of the court. Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process. First, the

court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement, Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116.  Second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable[.]" Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012). In evaluating a proposed settlement in order to grant preliminary approval, the court need only find that there is "probable cause" to submit the settlement to the class members and to hold a fairness hearing.  Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980)).

 In City of Detroit v. Grinnell Corp., the Second Circuit enumerated nine factors to guide courts in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation[.]

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

 The court must also determine if the settlement was "achieved through arms-length

negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013). In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

Although the Court is not required to make a finding of fairness as to the underlying settlement at this time, the Grinnell factors are instructive in determining whether to grant preliminary approval of the settlement. See Torres v. Gristede's Operating Corp., Nos. 04 CV 3316, 08 CV 8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that "[p]reliminary approval of a Settlement Agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties") (internal quotation marks and citations omitted).

1. Analysis of Procedural Fairness

The parties represent that the proposed settlement was entered into only after plaintiffs' counsel conducted a thorough investigation, obtained extensive discovery, and analyzed the proper measure of damages and the likelihood of class certification. Counsel conducted

interviews with the named plaintiffs and other pretrial detainees, obtained and reviewed over 3,000 pages of documents pertaining to the claims, and conducted a 30(b)(6) deposition of the defendant's employee responsible for implementing the Old Time Policy.  (See Reinert Decl. ¶ 10).   Moreover, the parties engaged in arms-length settlement negotiations, and attended over 15 sessions with this Court in an effort to reach a settlement in principle.  (See id. ¶ 13). Following the May 31, 2017 meeting, the parties continued to negotiate the terms of the settlement, which are now memorialized in the Stipulation.  (See Minute Entry, May 31, 2017, ECF No. 46).

 Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that the process of reaching the proposed settlement in this case was procedurally fair.


2.   Analysis of Substantive Fairness

a)   Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, the parties seek to avoid the expense and delay that would result from continuing litigation.  (Pls.' Mem. at 9).  Plaintiffs note that continued litigation would require extensive additional discovery, including multiple depositions of defendant's employees, the named plaintiffs, various class members, and NYCDOC representatives, in addition to more document discovery related to the development of and justification for the Old Time Policy.  (Id. at 10).  Plaintiffs further note that there would likely be extensive motion practice, including a motion for summary judgment involving complex constitutional issues and application of the Prison Litigation Reform Act.  (Id.)  A trial in this

matter would be fact-intensive and long.  (Id.)  Any judgment would clearly be appealed, further

delaying resolution.  (Id.)

Accordingly, the parties believe that this settlement allows for resolution of the claims,

providing significant monetary relief to the Class members "in a prompt and efficient manner."

(Id.)  Thus, the first Grinnell factor of avoiding potential protracted litigation favors settlement.

b)  Reaction of Class to Settlement

The reaction of the Class to the settlement may only be evaluated after notice of the

proposed settlement has been sent to the Class and the time for objections has passed.  In this

case, notice of the proposed settlement has not yet been distributed to the Class.  (Id.)  Thus, this

factor is neutral.

c)  Stage of Proceedings and Amount of Discovery Completed

The parties believe they have completed a sufficient amount of discovery to evaluate the

case and to conclude that the settlement is warranted.  (Pls.' Mem. at 11).  Plaintiffs have

interviewed current and former NYCDOC detainees and obtained numerous records, sufficient

to allow them to understand the Old Time Policy and the impact of this Policy on the detainees.

(Id. at 11-12).  The parties have engaged in months of litigation and negotiations, and attended

numerous conferences with this Court.  As such, the Court finds that they are well-equipped to

evaluate the strengths and weaknesses of the case.  (Id.)  When discovery has been extensive,

and counsel has sufficient information to appreciate the merits of the case, then settlement is

favored.  Tiro v. Public House Investments, LLC, No. 11 CV 7679, 2013 WL 4830949, at *7

(S.D.N.Y. Sept. 10, 2013); In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537.  Given the

extent of discovery conducted in this case and the time spent between the parties negotiating the settlement, the Court finds that this factor favors approval of the proposed settlement.

d) <u>Establishing Liability and Damages and Maintaining the Action Through Trial</u>

The risk of establishing liability also favors settling this dispute. Although plaintiffs believe their case is strong (<u>see</u> Pls.' Mem. at 12), establishing liability and continuing litigation through trial in a complex class action such as this inherently involves risk and uncertainty. (<u>Id.</u>) A trial on the merits would involve resolution of liability issues that have never been litigated to conclusion in this context and would likely involve an appeals process, both of which pose a risk of uncertainty with respect to outcome and duration. (<u>Id.</u>) Accordingly, the proposed settlement seeks to alleviate these risks. In light of the foregoing, considering the risks of appeal and the prolonged nature of the litigation, the Court finds that this factor favors approval of the proposed settlement.

e) <u>Maintaining the Class Through Trial</u>

Plaintiffs acknowledges that there is a risk associated with obtaining and maintaining class certification through trial. (<u>Id.</u> at 13). If plaintiffs were to move for class certification, defendants would likely oppose the motion and/or move for decertification at the end of trial or on appeal. (<u>Id.</u> at 13-14). This process would require additional discovery and extensive briefing by both parties and inherently involves risk, expense, and delay. Since the proposed settlement would eliminate the aforementioned risk, expense, and delay, the Court finds that this factor favors approval.

f) <u>Ability of Defendant to Withstand A Greater Judgment</u>

The parties acknowledge that defendant, as a municipality, "may be able to withstand a greater judgment." (<u>Id.</u> at 14). However, the parties contend that this alone should not preclude the Court from finding that the settlement is fair. (<u>Id.</u>); <u>see</u> <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 186 (W.D.N.Y. 2005); <u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000), <u>aff'd sub nom.</u> <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78. Accordingly, the Court finds that this factor is neutral and does not prevent approval of the proposed settlement.

g) <u>Range of Reasonableness of Settlement Fund</u>

The settlement represents substantial value given the risks of litigation in this case. (<u>Id.</u>) Although plaintiffs could possibly recover a greater amount at trial, plaintiffs recognize the inherent risks of trial. (Pls.' Mem. at 14). Plaintiffs contend that the settlement reached here falls within the "range of reasonableness" in that it provides "more than 'a fraction of the potential recovery.'" (<u>Id.</u> at 14-15). Although it is possible that a jury might, after trial, award plaintiffs more than $175 per day, plaintiffs believe that in weighing the risks and benefits of proceeding, the "settlement amount is more than reasonable. (<u>Id.</u> at 15). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." <u>Johnson v. Brennan</u>, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting <u>Officers for Justice v. Civil Serv. Comm'n</u>, 688 F.2d 615, 628 (9th Cir. 1982)). When the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable. <u>See</u> <u>In re MetLife</u>

Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

On the basis of the foregoing discussion of the Grinnell factors, the Court finds that the total award, including the deductions for administrative costs and individual awards to the named plaintiffs, is fair and reasonable.

### B.  Rule 23 Class Certification

#### 1)  The Requirements of Rule 23(e)

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification and provides the following:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In Wal-Mart Stores, Inc. v. Dukes, the Supreme Court discussed the requirements of Rule 23, stating the following:

> Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule. . . . We recognized in Falcon that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  [General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160–61 (1982)]. Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.

564 U.S. 338, 350–51 (2011) (citations omitted). Following the decision in Wal-Mart Stores, Inc. v. Dukes, the Second Circuit determined that "[t]he party seeking certification must establish [Rule 23's] requirements by a preponderance of the evidence." Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc., 772 F.3d 111, 119 (2d Cir. 2014) (citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008)). A district court must conduct a "rigorous analysis" that may "overlap with the merits of the plaintiff's underlying claims." Jacob v. Duane Reade, Inc., 602 F. App'x 3, 5 (2d Cir. 2015) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350–51). The court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 33 (2d Cir. 2006); see also Kurtz v. Kimberly-Clark Corp., No. 14 CV 1142, 2017 WL 1155398, at *34 (E.D.N.Y. Mar. 27, 2017).

In this case, plaintiffs argue that the settlement class meets all of the requirements for class certification and defendant does not oppose certification. (Pls.' Mem. at 16; Stip. ¶ 65). See County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989), aff'd in part, rev'd in part on other grounds, 907 F.2d 1295 (2d Cir. 1990).

a) Numerosity

Plaintiffs contend that the Proposed Subclasses satisfy the numerosity requirement of Rule 23(a). (Pls.' Mem. at 17). As the Second Circuit has noted, "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert denied, 115 U.S. 2277 (1995); see also Alleyne v. Time Moving & Storage Inc., 264

F.R.D. 41, 48 (E.D.N.Y. 2010).  Plaintiffs note that here there are approximately 470 identified class members, clearly satisfying the numerosity requirement.  (Reinert Decl. ¶ 16).

### b)  Commonality

Plaintiffs claim that the proposed Class satisfies the commonality requirement.  (Pls.' Mem. at 17-18).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'  This does not mean merely that they have all suffered a violation of the same provision of the law."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 349–50 (citing General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).  The common question "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id. at 350.  See also Marisol A. v. Guiliani, 126 F.3d 372, 377 (2d Cir. 1997) (holding that the "commonality requirement is met if plaintiffs' grievances share a common question of law or of fact").  Moreover, "[i]t is well-established that 'the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement.'"  Rivera v. Harvest Bakery Inc., 312 F.R.D. at 269. d. at 271 (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 199 (S.D.N.Y. 2011)); see also Ramirez v. Riverbay Corp., 39 F. Supp. 3d 354, 364 (S.D.N.Y. 2014) (quoting Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 127 (S.D.N.Y. 2011)) (explaining that "it is axiomatic that 'the commonality requirement may be met when individual circumstances of class members differ,' as long as class members' 'injuries derive from a unitary course of conduct'").

Plaintiffs claim that the proposed Class satisfies the commonality requirement because there are several common factual and legal issues that apply to all Class members, including

whether the Old Time Policy was imposed for or had the effect of imposing punishment, whether the policy had a legitimate governmental purpose, whether the pretrial detainees had a liberty interest in avoiding solitary confinement, and what process was due to the detainees before the policy was imposed upon them. (Pls.' Mem. at 18). These common legal questions and the related operative facts clearly satisfy the commonality requirement of Rule 23. See, e.g., Butler v. Suffolk County, 289 F.R.D. 80, 98 (E.D.N.Y. 2013).

Accordingly, the Court finds that plaintiffs have established commonality for the proposed Class.

### c) Typicality

Plaintiffs claim that the named plaintiffs' claims are typical of the putative class members' claims. (Pls.' Mem. at 18-19). Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality has been found when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)). Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims. Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 456–57 (E.D.N.Y. 1996)).

Plaintiffs claim that the named plaintiffs and Class members all served time in PSEG as pretrial detainees and all suffered the same due process violations. (Pls.' Mem. at 19). The fact

that they may have spent differing amounts of time does not mean that their claims are not typical of those of the class.

### d) Adequacy of Representation

Plaintiffs claim that the named plaintiffs and their counsel will adequately represent the Classes. (Pls.' Mem. at 19). In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-pronged test. First, there must be a showing that class counsel is "qualified, experienced and able to conduct the litigation." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d at 35 (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)). Second, the named plaintiffs' interests may not be "antagonistic to the interest of other members of the class." Id. (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d at 60); see also Hill v. City of New York, 136 F. Supp. 3d 304, 356 (E.D.N.Y. 2016). The focus of the inquiry is uncovering "conflicts of interest between named parties and the class they seek to represent." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d at 35 (quoting Amchen Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)). The conflict "must be fundamental" to defeat a motion for class certification. Id. (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 145 (2d Cir. 2001)). Further, to satisfy the adequacy requirement, the named plaintiffs must "possess the same interests and suffer the same injuries as the class members." In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011) (quoting Amchen Prods., Inc. v. Windsor, 521 U.S. at 625–26).

Plaintiffs claim that neither the named plaintiffs nor counsel have any "interests that are antagonistic to or at odds with the class members' interests." (Pls.' Mem. at 19; see id. at 20).

18

Plaintiffs also claim that counsel is "qualified, experienced and able to conduct the litigation." (Id. at 20 (citing cases in which Mr. Reinert has been approved as class counsel); see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d at 60.

It is clear to this Court that plaintiffs and counsel are adequate to represent the Class, and that counsel has demonstrated the necessary commitment to the Class through their efforts at prosecuting the case to settlement. See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d at 253.

Accordingly, the Court finds that plaintiffs have satisfied the adequacy requirement of Rule 23(a)(4).

e) Ascertainability

In addition to the requirements of Rule 23(a), "the Second Circuit has also recognized the 'implied requirement of ascertainability.'" Hughes v. Ester C Co., 317 F.R.D. 333, 343 (E.D.N.Y. 2016) (quoting In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig., No. 13 CV 150, 2015 WL 5730022, at *2 (S.D.N.Y. Sept. 30, 2015)); see also In re Initial Pub. Offerings Sec. Litig., 471 F.3d at 30 (discussing "[t]he implied requirement of ascertainability"). "The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries. . . . In other words, a class should not be maintained without a clear sense of who is suing about what." In re Petrobras Secs., 862 F.3d 250, 269 (2d Cir. 2017).

Here, the parties have identified a list of 470 potential claimants. Accordingly, there is no question that membership in the Class is ascertainable.

2) The Requirements of Rule 23(b)

In addition to satisfying the prerequisites of Rule 23(a), "the district court must be satisfied that certification is appropriate under Rule 23(b)." Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (citing Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013)). Certification may be granted under Rule 23(b)(3) if both "questions of law or facts common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Id. (quoting Fed. R. Civ. P. 23(b)(3)). Plaintiffs claim that the proposed Class meets the requirements of Rule 23(b)(3). (See Pls.' Mem. at 21–24; see also supra note 3).


a) Predominance

Under Rule 23(b)(3), when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper [] even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. at 1045 (citing 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (3d ed. 2005)).

However, common issues, such as liability, may be certified even where other issues, such as damages, "do not lend themselves to classwide proof." Id. (citing In re Nassau Cty. Strip Search Cases, 461 F.3d at 227). Indeed, to the extent that individual defenses "'may affect different class members differently,' their existence 'does not compel a finding that individual issues predominate over common ones.'" Id. (quoting In re Nassau Cty. Strip Search Cases, 461

F.3d at 225).  "In short, the question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof' and whether 'these particular issues are more substantial than the issues subject only to individualized proof.'" Id. at 139 (quoting In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013)).

Plaintiffs argue that the central issue of the constitutionality of the Old Time Policy predominates over any factual or legal variations among class members. (Pls.' Mem. at 21 (citing Betances v. Fischer, 304 F.R.D. 416, 429 (S.D.N.Y. 2015)). See also In re Nassau Cty Strip Search Cases, 461 F.3d 219, 228 (2d Cir. 2006)(holding that "when plaintiffs are allegedly aggrieved by a single policy of defendants, . . . the case presents the type of situation for which the class action device is suited since many nearly identical litigations can be adjudicated in unison").

Accordingly, the Court finds that plaintiffs have satisfied the predominance requirement of Rule 23(b)(3).

b)  Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiffs must demonstrate that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal quotation marks omitted).  The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the prosecution or defense of separate actions; [(2)] the extent and nature of any litigation concerning the controversy already begun

> by or against class members; [(3)] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); see also Pagan v. Abbott Labs., Inc., 287 F.R.D. 139, 147 (E.D.N.Y. 2012). "Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policies, [and] the damages suffered are small relative to the expense and burden of individual litigation." Cazares v. AVA Rest. Corp., No. 15 CV 477, 2017 WL 1229727, at *8 (E.D.N.Y. Mar. 31, 2017) (quoting Fonseca v. Dircksen & Talleyrand Inc., No. 13 CV 5124, 2015 WL 5813382, at *6 (S.D.N.Y. Sept. 28, 2015)). Here, the proposed Class members likely lack the means to prosecute individual actions and employing the class method will achieve economies of scale and avoid the waste of judicial resources and the possibility of inconsistent findings. (See Pls.' Mem. at 22).

The Court agrees with plaintiffs that the Rule 23(b)(3) factors weigh heavily in favor of finding that a class action is a superior method of resolving the class members' claims.

   3) Conclusion

In light of the foregoing, the Court finds that plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(3) as to the Settlement Class. Therefore, pursuant to the parties' Stipulation, the Court conditionally certifies a settlement class as defined in Paragraph 4 of the Stipulation, consisting of all people who, while pretrial detainees at any time between November 23, 2012 and September 16, 2015, were confined in PSEG in a NYCDOC facility pursuant to the Old Time Practice a/k/a the "Historical Time Practice." (See Stip. ¶¶ 2-4).

C.  Appointment of Class Counsel

The Court also grants plaintiffs' motion to appoint plaintiffs' counsel as Class Counsel. In evaluating the adequacy of Class Counsel, Rule 23(g) requires the Court to consider:  (1) the work done by counsel in investigating the potential claims in the case; (2) counsel's experience in handling similar class actions and other complicated litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will expend to represent the class.  Fed. R. Civ. P. 23(g).  In this case, plaintiffs' attorneys have had extensive experience litigating prisoners' rights cases and thus they are well-versed in the applicable law.  (Reinert Decl. ¶¶ 29-37).  Moreover, plaintiffs' counsel have performed substantial work in this litigation, identifying, investigating, prosecuting, and settling the claims on behalf of the affected individuals.  (Id.)

As previously discussed, the Court also has considered whether, under Rule 23(a)(4), the representative plaintiffs "will fairly and adequately protect the interests of the class," and have no "interests antagonistic to the interests of other class members."  Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).  There is no evidence here that the named plaintiffs have any antagonistic interests or that there would be anything that would hinder their ability to act as class representatives.

Accordingly, the Court finds that the named plaintiffs are adequate class representatives and that proposed Class Counsel satisfy the criteria of Rule 23(g).  Thus, the Court appoints plaintiffs' counsel to represent the class members in this matter.


D.  Adequacy of Notice and Distribution Process

Pursuant to the Federal Rules of Civil Procedure, when the parties propose a settlement, the "court must direct notice [of the settlement] in a reasonable manner to all class members who

would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Under Rule 23(e)(1), the "'[c]ourt has virtually complete discretion as to the manner of giving notice to class members.'" In re MetLife Demutualization Litig., 689 F. Supp. 2d at 345 (quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)). In addition to notice of a proposed settlement, the Rule also either requires or permits courts to provide notice of the class proposed to be certified, depending on the type of class action proceeding. See Fed. R. Civ. P. 23(c)(2). In a Rule 23(b)(3) class action such as this, the court "must direct . . . the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule further provides that notice to such classes must "concisely and clearly state . . . (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

In Eisen v. Carlisle & Jacquelin, the Supreme Court held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort. 417 U.S. at 173-76 (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177. Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger

24

v. Kenrick, 698 F.2d at 70).

Here, the proposed Notice of Class Action Settlement provides the following information: (1) an explanation of the nature of the action; (2) a description of the class certified; (3) the claims, issues and defenses; (4) that a class member may appear through a separate attorney if he desires; (5) that any member who wishes may be excluded by the court; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members of a Rule 23(b)(3) class. (See Proposed Notice, Ex. C to Stip.). The proposed notice also describes the allocation of fees and provides information regarding the final approval hearing. In addition to mailing, the notice will be posted at various locations, and the Claims Administrator will take reasonable steps to ascertain the proper addresses for each class member. (See Pls.' Mem. at 24).

The Court finds the proposed Notice and this means of notification to be sufficient. The proposed Notice itself is sufficiently detailed so as to inform the class members of their rights and obligations, and the method of notice is practical and likely effective in reaching the affected individuals. See Weinberger v. Kendrick, 698 F.2d at 72 (stating that mailing individual notices to class members at their last known addresses was a sufficient means of notification under the circumstances). As such, the Court approves the Proposed Notice, provided that it include contact information for Class Counsel, specifically, an address, phone number, and e-mail address for Class Counsel. The Proposed Notice shall also include the telephone number and website address provided for in the Stipulation.

The Court has also reviewed the proposed Claims Form (Stip., Ex. E) and Opt-Out Form (Stip., Ex. G). The Court finds that the proposed forms effectively advise class members of their rights and options and, in conjunction with the Proposed Notice, vindicate the purpose of Rule 23(c)(2)(B). The Court therefore approves the proposed Claim Form and Opt-Out Form.

## CONCLUSION

Having considered the parties' submissions, the Court grants the plaintiffs' motions for preliminary approval of the class settlement, for conditional class certification, and for the appointment of plaintiffs' counsel as Class Counsel. Counsel for the parties are directed to submit proposed dates for the fairness hearing to the Court as soon as possible after entry of this Order for inclusion on the notice to class members.

The parties shall make a copy of this Memorandum and Order available on the website described in the Stipulation.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      December 11, 2017

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York