UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROY PARKER *et al.* on behalf of themselves and
all others similarly situated,

                          Plaintiffs,                **MEMORANDUM AND ORDER**
                                                                                15 CV 6733 (CLP)
            - against -

CITY OF NEW YORK,

                          Defendant.
-----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On December 11, 2017, this Court entered an Order in this case granting preliminary approval of the Class Settlement, preliminarily certifying the Settlement Class, appointing a Claims Administrator, and directing the Administrator to disseminate notice of the proposed settlement. Notice was sent to the Class beginning on January 25, 2018, and following a period for objections, plaintiffs moved on July 31, 2018, for final approval of the Settlement Agreement. On September 10, 2018, this Court held a fairness hearing to determine whether the Settlement was "fair, reasonable, and adequate." City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Restaurant, Inc., 209 F.3d 43 (2d Cir. 2000).

For the reasons set forth below, the Court approves of the proposed Class Settlement, certifies the Settlement Class, and approves of plaintiffs' counsel as Class Counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Allegations

On November 23, 2015, Roy Parker, on behalf of himself and all others similarly situated, filed a class action Complaint against the City of New York, claiming that the New York City Department of Corrections ("NYCDOC") had violated the Constitution by holding pretrial detainees in solitary confinement or punitive segregation ("PSEG") without providing them with due process and for no legitimate purpose. Following the filing of the Complaint on November 23, 2015, the City filed an Answer on April 21, 2016. The plaintiff's First Amended Complaint was thereafter filed on November 12, 2016, adding Rajab Asep, Christopher Chandler, Jamal Coleman, Allana Dixon, Chauncey Miranda, and Cesar Rivera as named plaintiffs.

Plaintiffs allege that for many years, NYCDOC pretrial detainees had been placed in PSEG for no reason except for the fact that the detainee had previously been found to have violated a disciplinary rule while incarcerated on another occasion, but had been released from custody prior to serving the entirety of the disciplinary sentence. Plaintiffs allege that if the detainee were later returned to NYCDOC custody, the City would require the detainee to serve the remainder of his "old" solitary confinement time. Plaintiffs allege that this explicit policy of the City, referred to as the "Old Time Policy," violated plaintiffs' constitutional rights because defendant never provided these detainees with a hearing or any other process. The Old Time Policy was set forth in a NYCDOC directive and described as follows:

> If an inmate is released on bail or on his/her own recognizance, is discharged, or is transferred to the custody of another jurisdiction or agency before he/she finishes serving his/her Punitive Segregation sentence . . . the transfer will interrupt the sentence being served and the interruption will

continue until the inmate returns to the jurisdiction of the Department, at which time he/she may be required to serve the balance owed[.]

(Reinert Decl.[1] ¶ 4 (quoting from Inmate Disciplinary Due Process, Directive 6500R-B, III.D.5, attached as Ex. A)).

While the City claimed that placement in PSEG was necessary to ensure the safe operation of the detention facility, plaintiffs allege that it was simply to punish pretrial detainees who may not be punished until a formal adjudication of guilt has been made in accordance with due process. In seeking compensatory damages for the time spent in PSEG as a result of the Old Time Policy, plaintiffs allege that because pretrial detainees may not be punished until the government has secured a formal adjudication of guilt in accordance with due process of law, and because they may not be deprived of their liberty without adequate process, the defendant's policy violates the substantive and procedural due process rights of pretrial detainees.[2]

The Court supervised discovery in this case and engaged in approximately 15 settlement discussions with the parties over an 18-month period, culminating in the execution of the Settlement Stipulation on August 11, 2017. (Reinert Decl. ¶¶ 6, 13).

As set forth in this Court's Order of December 11, 2017, the Class is defined in the Stipulation as the named plaintiffs and all people who were confined in PSEG while a pretrial detainee based on the Old Time Policy at any time between November 23, 2012 and September 16, 2015 (the "Class"). As part of the Settlement, Class Members will receive minimum compensation of $175 for each day spent in PSEG while a pretrial detainee, as a result of the Old

---

[1] Citations to "Reinert Decl." refer to the Declaration of Alexander A. Reinert, Esq., dated August 23, 2017.
[2] The Old Time Policy was discontinued as of September 16, 2015. See Bryant v. City of New York, No. 14 CV 8672, 2016 WL 3766390 (S.D.N.Y. July 8, 2016). Thus, plaintiffs' claim for damages is based only on past time spent in PSEG prior to the change in policy.

3

Time Policy. (Stip.[3] ¶ 57). Class Members who were diagnosed as having a serious mental illness or who were juveniles under the age of 18 when they served PSEG time due to the Old Time Policy will receive $200 per day spent in PSEG as part of the Settlement. (Id. ¶¶ 55-56). The Stipulation further provides for modest service awards to the named plaintiffs of no more than $500 per person. (Id. ¶ 121).

Following the Court's preliminary approval of the Class Settlement, notice was disseminated to 471 identified Class Members for whom addresses could be located. (Pls.' Mem. at 4).[4] Additionally, summaries of the settlement terms were posted in NYCDOC and Department of Probation facilities. (Id.) Since only 271 Class Members – fewer than 75% of identified Class Members – responded by the initial deadline for filing a claims form, opting out, or objecting to the settlement, the deadline was extended to May 25, 2018, in accordance with the terms of the Stipulation. (Id.) By the end of the extended claims period, 379 of 471 initial potential Class Members had filed claims amounting to $4,297,175; no Class Members opted out of the Class, and no objections were filed. (Id.)

As of the date of the final fairness hearing held on September 10, 2018, 129 individuals had filed challenges seeking to be included in the Class. Of those challenges, 36 individuals were found to be members of the Settlement Class, with claims amounting to more than $400,000.[5] After the final fairness hearing, two additional individuals filed challenges seeking to

---

[3] Citations to "Stip." refer to the parties' Stipulation filed August 23, 2017, Exhibit 1 to ECF No. 56.
[4] Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, Class Certification, and Appointment of Class Counsel, dated July 31, 2018, ECF No. 76.
[5] Plaintiffs' counsel explains that challenges "were rejected for various reasons, including that (1) some challengers did not appear to have served any time at all in punitive segregation; (2) some challengers did not appear to have served any Old Time; (3) some challengers did not serve any Old Time during the class period; and (4) some challengers did not serve Old Time as pretrial detainees during the class period. All challenges were determined by examining records maintained by NYCDOC." (7/31/18 Reinert Decl. ¶ 24 n. 2).

be included in the Class. (See 8/13/18 Pls.' Ltr.).[6] The parties initially disputed whether the two additional individuals should be included in the Class, and have since determined between themselves that one person is a member of the Class and one person is not. (See 11/2/18 Status Report).[7] Having considered the rationale offered by counsel, the Court approves of this resolution.

In granting preliminary approval of the Class Settlement, this Court set forth in its December 11, 2017 Order a detailed analysis of the legal standards under Rule 23 of the Federal Rules of Civil Procedure and the application of those standards to the facts and circumstances surrounding this Settlement. See Parker v. City of New York, No. 15 CV 6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017). That analysis is incorporated by reference herein and repeated only to the extent necessary to address issues relating to the pending motion for Final Approval of the Settlement.

Having reviewed the challenges and the responses thereto and for the reasons set forth below, the Court approves the proposed Class Settlement as fair, reasonable and adequate under the applicable standards.

DISCUSSION

A. Approval of the Settlement

To grant approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P.

---

[6] Citations to "8/13/18 Pls.' Ltr." refer to plaintiffs' letter dated August 13, 2018, ECF No. 80.
[7] Citations to "11/2/18 Status Report" refer to plaintiffs' Status Report dated November 2, 2018, ECF No. 90.

23(e). Judicial policy favors the settlement and compromise of class actions. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Whether a settlement is fair is a determination within the sound discretion of the court. Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process. First, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116. Second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable[.]" Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

1. Analysis of Procedural Fairness

In determining whether to approve a settlement, the court must consider whether the settlement was procedurally fair, that is whether the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the district court must "determine a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013). In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of

collusion, and that the class members' interests [were] represented adequately.'" Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

In its preliminary approval Order, the Court found that the proposed Settlement was entered into only after plaintiffs' counsel had conducted a thorough investigation, obtained extensive discovery, and analyzed the proper measure of damages and the likelihood of class certification. Parker v. City of New York, 2017 WL 6375736, at *9 (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116 for the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery"). Not only did counsel conduct interviews with the named plaintiffs and other pretrial detainees, obtain and review over 3,000 pages of documents pertaining to the claims, and conduct a Rule 30(b)(6) deposition of the defendant's employee responsible for implementing the Old Time Policy, but the parties engaged in arms-length settlement negotiations, and attended over 15 sessions with this Court in an effort to reach a settlement in principle. (See id. (citing Reinert Decl. ¶¶ 10, 13)).

Based on these factors, the Court continues to find that the process of reaching this proposed Settlement was procedurally fair. See id. at 10.

2. Analysis of Substantive Fairness

As set forth in its December 11, 2017 Order, the Court must also determine if the Settlement is substantively fair. In the Order granting preliminary approval of the Settlement, this Court evaluated the nine factors set out by the Second Circuit in City of Detroit v. Grinnell Corp. Parker v. City of New York, 2017 WL 6375736, at *10 (quoting 495 F.2d 448, 463 (2d

Cir. 1974) (internal citations omitted), <u>abrogated on other grounds</u>, <u>Goldberger v. Integrated Res., Inc.</u>, 209 F.3d 43 (2d Cir. 2000)). These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d at 463; see also D'Amato v. Deutsche Bank, 236 F.3d at 86; Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

    a. <u>Complexity, Expense, and Likely Duration of the Litigation</u>

Turning to the first <u>Grinnell</u> factor, this Court, in its December 11, 2017 Order, examined plaintiffs' claims that "continued litigation would require extensive additional discovery, including multiple depositions of defendant's employees, the named plaintiffs, various class members, and NYCDOC representatives, in addition to more document discovery related to the development of and justification for the Old Time Policy." <u>Parker v. City of New York</u>, 2017 WL 6375736, at * 10. The Court additionally noted plaintiffs' claims that "there would likely be extensive motion practice, including a motion for summary judgment involving complex constitutional issues and application of the Prison Litigation Reform Act." <u>Id.</u> The Court therefore concluded that "the first <u>Grinnell</u> factor of avoiding potential protracted litigation favors settlement." <u>Id.</u> at 11.

Plaintiffs note that this Grinnell factor "has not changed significantly" since the Court's 2017 Order and they reiterate their position that the settlement "avoids the need for resource-intensive motion practice, depositions, and trial." (Pls.' Mem. at 10).

Accordingly, the Court finds that the first Grinnell factor of avoiding potential protracted litigation continues to favor settlement of this matter.

b. Reaction of Class to Settlement

The second Grinnell factor – the reaction of the Class – could not be evaluated at the time of the preliminary approval stage, but since then, the reaction has been overwhelmingly positive. Of the 471 individuals initially identified by the parties as Class Members, 379, or 80 percent, have filed claim forms, seeking settlement funds amounting to $4,297,175. (7/31/18 Reinert Decl. ¶ 24).[8] No responding member of the Class has asked to be excluded from this Settlement, and plaintiffs represent that "no class member has mounted a substantive objection . . . [which is] a 'strong indication of fairness.'" (Pls.' Mem. at 11 (citing Prasker v. Asia Five Eight LLC, No. 08 CV 5811, 2010 WL 476009, at *4 (S.D.N.Y. Jan. 6, 2010)).

Five Class Members have filed letters to the Court as challenges to their settlement positions. Three Class Members, Brian Francisco, Allen Proctor, and Ryan Jhagroo, filed objections as to the amount of money provided in the Settlement. (7/31/18 Reinert Decl. ¶ 37; Proctor Ltr.;[9] Jhagroo Ltr.[10]).

---

[8] Citations to "7/31/18 Reinert Decl." refer to the Declaration of Alexander A. Reinert, Esq., dated July 31, 2018, ECF No. 76-1.
[9] Citations to "Proctor Ltr." refer to the letter filed by Allen Proctor dated March 23, 2018, ECF No. 66.
[10] Citations to "Jhagroo Lr." refer to the letter filed by Ryan Jhagroo dated March 19, 2018, ECF No. 64.

Brian Francisco submitted a letter challenging the amount he will receive in connection with the Settlement. According to the parties, they "resolved [that concern] through the challenge procedure." (7/31/18 Reinert Decl. ¶ 37).

With respect to Mr. Proctor's letter, plaintiffs' counsel represents that after correspondence with plaintiffs' counsel, "Mr. Proctor indicated that he wished to withdraw his objection." (Id. ¶ 36). While that position has not been communicated by Mr. Proctor directly to the Court, the Court accepts plaintiffs' counsel's representation.

Mr. Jhagroo's "objection was ambiguous, because in some respects it resembled a request to opt out of the settlement." (Id.) Class counsel states that they referred Mr. Jhagroo to an experienced civil rights attorney to determine whether Mr. Jhagroo wished to participate in the settlement or to pursue his own litigation. (Id.) Counsel states that "Mr. Jhagroo ultimately decided to participate in the settlement, although he has not had any subsequent communication with the Court." (Id.)

The Court has reviewed the correspondence from an additional two potential Class Members, which may be broadly construed as challenges to specific provisions in the Settlement Agreement. One letter requested that the Settlement funds be sent directly to the Class Member rather than through Class Counsel. (Rodriguez Ltr.).[11] A second series of letters requested information from the Court concerning the process of obtaining the Settlement funds and the claim form process. (See 5/16/18 Pls.' Ltr.).[12]

Having considered these five challenges, the Court finds that, even if the filings are to be construed as objections to the Settlement, these objections do not call into question the fairness

---

[11] Citations to "Rodriguez Ltr." refer to the letter filed by Shamel Rodriguez dated May 4, 2018, ECF No. 68.
[12] Citations to "5/16/18 Pls.' Ltr." refer to plaintiffs' letter dated May 16, 2018, ECF No. 71. Plaintiffs' counsel indicates that "class counsel have responded to those letters." (7/31/18 Reinert Decl. ¶ 37).

of the Settlement. The vast majority of Class Members have not raised any objection to the settlement, and no Class Members have opted out. See Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 432-33 (S.D.N.Y. 2014) (holding that the fact that "the vast majority of class members neither objected not opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate") (citing Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008)); see also Sewell v. Bovis Lend Lease, Inc., No. 09 CV 6548, 2012 WL 1320124, at *7 (S.D.N.Y. Apr. 16, 2012) (stating that "[t]he fact that the overwhelming majority of class members have neither objected nor opted out weighs in favor of settlement approval"). The Court therefore finds that the positive response of the Class Members to the Settlement weighs in favor of final settlement approval.

c. Stage of the Proceedings

This factor "also has not changed substantially since the Court preliminarily approved the settlement." (Pls.' Mem. at 12). This Court has previously found that the "parties have engaged in months of litigation and negotiations, and attended numerous conferences with this Court." Parker v. City of New York, 2017 WL 6375736, at *11. Given the extensive discovery conducted in this case and given the Court's experience in supervising this litigation, including approximately 15 settlement conferences, the Court finds this factor favors final approval of the proposed Settlement.

d. Establishing Liability and Damages and Maintaining the Action Through Trial

Plaintiffs acknowledge the risk of establishing liability and maintaining class certification through trial. (See Pls.' Mem. at 14). The defendant denies liability, and plaintiffs note their claims hinge "on both complex legal and factual inquiries." (Id.) A trial on the merits would involve resolution of liability issues that have never been litigated to conclusion in this context

and would likely involve an appeals process, both of which pose a risk of uncertainty with respect to outcome and duration. (Id.) Accordingly, the proposed Settlement seeks to alleviate these risks.

   e. Maintaining the Class Through Trial

Plaintiffs acknowledge that there is a risk associated with obtaining and maintaining class certification through trial. (Id. at 15). A motion for class certification would require additional discovery and briefing and inherently involves risk, expense, and delay. (See id.) Since the proposed Settlement eliminates the aforementioned risk, expense, and delay, the Court finds that this factor favors approval.

   f. Ability of Defendants to Withstand a Greater Judgment

The parties acknowledge that defendant, as a municipality, "may be able to withstand a greater judgment." (Id.) However, this alone should not preclude the Court from finding that the settlement is fair. (Id.); see Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005); In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000), aff'd sub nom. D'Amato v. Deutsche Bank, 236 F.3d 78. Accordingly, the Court finds that this factor is neutral and does not prevent approval of the proposed Settlement.

   g. Range of Reasonableness of Settlement Fund

The Settlement Agreement provides compensation of $175 for each day that most Class Members were held in solitary confinement as a result of the Old Time Policy, with compensation of $200 per day for those Class Members who were juveniles or were diagnosed with a serious mental illness at the time of their confinement. (Pls.' Mem. at 16). Plaintiffs note that "although there are few cases in which policies like the Old Time Policy have been challenged," the Settlement here is similar to the amount covered by plaintiffs who prevailed

after trial. (Id.) Plaintiffs also note that there is a significant risk if the case were to proceed, citing the Second Circuit's reversal of a Connecticut district court's award of $175 per day in damages for a pretrial detainee alleging similar violations, after finding the defendants were entitled to qualified immunity. (Id. (citing Almighty Supreme Born Allah v. Milling, 876 F.3d 48 (2d Cir. 2017)). Plaintiffs state that "most cases involving procedural due process claims by prisoners who establish that they were wrongfully placed in solitary confinement result in smaller judgments of between $25 and $125 per day." (7/31/18 Reinert Decl. ¶ 17 (citing McClary v. Coughlin, 87 F.Supp. 2d 205, 218 (W.D.N.Y. 2000), aff'd sub nom. McClary v. Kelly, 237 F.3d 185 (2d Cir. 2001); Pino v. Dalsheim, 605 F. Supp. 1305 (S.D.N.Y. 1984)).

Although it is possible that a jury might, after trial, award plaintiffs more than $175 per day, plaintiffs believe that in weighing the risks and benefits of proceeding, including the risks of qualified immunity, the settlement amount is more than reasonable. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). When the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable. See In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

The Court further notes that, unlike some settlements, in which the defendant makes a fixed payment into a common fund marked for distribution to the class, the Stipulation provides for direct payments to each Class Member by the defendant based on claim forms submitted to the Claims Administrator. Parker v. City of New York, 2017 WL 6375736, at *5. Moreover,

unlike some class settlements where the plaintiffs' counsel takes a percentage of the total fund regardless of how many class members participate, here, the Class Members who participate in the Settlement will receive the full value of their claims, as plaintiffs' counsel have agreed to seek fees in a separate motion brought before this Court with no prior agreement with the defendant. Id.

On the basis of the foregoing discussion of the Grinnell factors, the Court finds that the total Settlement award, including the deductions for administrative costs, is fair and reasonable.

3. Attorneys' Fees, Litigation Expenses, and Service Awards

As noted, plaintiffs' counsel have agreed to seek fees in a separate motion brought before this Court. Id. However, plaintiffs presently seek an incentive award in the amount of $500 for the Class Representatives in this case, amounting to less than five percent of the average compensation of each class member. (Pls.' Mem. at 18).

Plaintiffs state that the Class Representatives have "made significant contributions to the lawsuit and faced significant risks by participating . . . [that] for those held in correctional facilities, participation in lawsuits can lead to retaliation." (Id. at 18). Courts have recognized that the risk of retaliation in the employment discrimination context often justifies awarding incentive payments to named plaintiffs, and this Court finds that similar, if not more heightened, risks of retaliation exist when incarcerated persons bring suit against their jailers. See Velez v. Majik Cleaning Serv., No. 03 CV 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) (stating that "in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). Having reviewed the detailed declaration from plaintiffs' counsel as to the time and effort devoted by the

Class Representatives in assisting in the prosecution of the case, the Court also approves these awards as fair and reasonable.

This Court also previously undertook an assessment of the adequacy of plaintiffs' counsel as Class Counsel under Rule 23(g) and found Class Counsel to have had extensive experience litigating prisoners' rights cases and to be well-versed in the applicable law. Parker v. City of New York, 2017 WL 6375736, at *23. Moreover, plaintiffs' counsel performed substantial work in this litigation, identifying, investigating, prosecuting, and settling the claims on behalf of the affected individuals. Id. The Court therefore confirms the appointment of plaintiffs' counsel as Class Counsel.

## CONCLUSION

Having considered the parties' submissions and presentations during the fairness hearing, and having considered all potential challenges and objections to the proposed Settlement, the Court grants the plaintiffs' motions to certify the proposed Settlement Class under Federal Rule of Civil Procedure 23(b)(3), grants final approval of the Settlement Stipulation, and appoints plaintiffs' counsel as Class Counsel.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
December 4, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

15